UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
UNITED STATES OF AMERICA,       : Docket#
                                : 04-cr-672
                                : 04-c...
    - versus -                  :
                                : U.S. Courthouse
WILLIAM TURSI,                  : Brooklyn, New York
            Defendant           :
                                : November 4, 2005
------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT, E.D.N.Y
★ DEC 06 2005 ★
BROOKLYN OFFICE

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES CHIEF DISTRICT JUDGE

A P P E A R A N C E S:

**For the Government:**        **Roslynn R. Mauskopf, Esq.**
                               United States Attorney

                          BY:  **Sarah Coyne, Esq.**
                               Assistant U.S. Attorney
                               225 Cadman Plaza East
                               Brooklyn, New York   11201

**For the Defendant:**         **John Murphy, Esq.**
                               60 Bay Street
                               Staten Island, New York

**Official Transcriber:**      **Rosalie Lombardi**
                               L.F.

**Transcription Service:**     **Transcription Plus II**
                               823 Whittier Avenue
                               New Hyde Park, N.Y.   11040
                               (516) 358-7352

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings 2

1  THE CLERK: <u>United States v. William Tursi</u>.
2  Your appearances, counsel.
3  MS. COYNE: Good afternoon, your Honor.
4  Sarah Coyne on behalf of the government.
5  MR. MURPHY: Good afternoon, your Honor.
6  John Murphy appearing for Dr. Tursi. We're
7  ready for sentence.
8  THE COURT: Have you had an opportunity to read
9  the presentence report?
10  THE DEFENDANT: Yes, your Honor.
11  THE COURT: All right. I am ready to hear you.
12  MS. COYNE: Your Honor, the government believes
13  that a sentence within the guideline range is reasonable
14  and appropriate in this case.
15  THE COURT: I'm sorry, I was looking at you.
16  Why suddenly people have switched sides here, it seems to
17  me. I meant to ask you.
18  MR. MURPHY: Good afternoon, again.
19  Your Honor, this is a Zone-A, zero to six month
20  guideline calculation. As your Honor is aware from our
21  submissions, Dr. Tursi has but for his appearance before
22  your Honor and the circumstances leading him here, led a
23  blameless life, honorably discharged with the rank of
24  Lieutenant Colonel after serving the United States in the
25  first Gulf War treating allied and American soldiers who

Proceedings

3

1  suffered injuries during that war, his many, many years
2  of providing good and faithful and diligent medical
3  services to his patients in Staten Island, his other
4  services to the community, all of which were recognized
5  in the probation report and recommended to your Honor as
6  a mitigation in the sentence you should impose.
7           I would also note that it's unlikely that the
8  medications prescribed by the doctor's medical practice
9  in the year 2000 played any role in Captain Smith's
10 disability, three years and two months after this Coast
11 Guard medical form was signed and submitted by Mr. Smith.
12          Judge, it seems to me that there are severe
13 collateral consequences to imposing a sentence of
14 incarceration on Dr. Tursi.  Moreover, the mere fact that
15 he's here will visit severe collateral consequences, not
16 only on his patients but on 18 people whose livelihood
17 depends on his continuing to practice medicine, on his
18 own family.  He has a daughter who still has a year and a
19 half left at Binghamton University.  He's the sole
20 provider for her.  And as you are aware, he's provided a
21 stable and beautiful home life for his family, educated
22 his children, helped other in the community, right down
23 to his coaching of a girl's basketball, even beyond years
24 when his daughters were grown and no longer
25 participating.

Transcription Plus II           Rosalie Lombardi

Proceedings

4

1   You have a good man standing before you. He
2   will suffer collateral consequences regardless of what
3   sentence you impose but they are severe and they impact
4   on him, on innocent third parties.
5       Your Honor, I am asking you not to incarcerate
6   him. I think the mere fact of the prosecution is a
7   punishment in and of itself that he will not recover
8   from. I ask that you to temper justice with mercy and
9   impose a reasonable sentence.
10      THE COURT: Do you wish to be heard?
11      THE DEFENDANT: I am extremely sorry for what
12  has happened and I hope you'll take into account the life
13  I have left so far and the service I have provided to my
14  country and my community. Thank you.
15      THE COURT: First let me say that I don't
16  believe that the government has proved by a preponderance
17  of the evidence that the medications that Mr. Smith was
18  taking at the time that this report was filled out was
19  the cause of the events that took place. And that
20  resulted in the crash of the Andrew J. Barberi.
21      I will say more about that.
22      MR. HESSION: Again, your Honor, I cannot hear
23  a word you're saying.
24      THE COURT: Move up.
25      I will repeat it.

**Proceedings**

5

1  MR. HESSION: Thank you, your Honor.
2  THE COURT: Let me just say that first I find
3  that the government has failed to prove by a
4  preponderance of the evidence that the medications that
5  the defendant was taking at the time of the accident and
6  at the time of the report that Dr. Tursi filled out was a
7  cause of the incident on October 15 when the Andrew
8  Barberi crashed into the Staten Island Ferry Pier.
9  I will have more to say about the reasons for
10 that finding when I sentence Mr. Smith but in brief
11 summary, what the government has shown is that Tramadol
12 could cause sleeplessness in some people who take the
13 drug. They offered no empirical evidence about the
14 extent to which that is the percentage of persons who
15 take this drug are likely to suffer this consequence.
16 The Physician's Desk Reference, which contains
17 information about drugs and their side effects, indicates
18 to the extent that there is statistical evidence
19 available, that this side effect would appear in about
20 one out of four people who took the medication.
21 Beyond that, I believe there are only two
22 government witnesses who testified on the issue of the
23 effect of the Tramadol, one of whom failed to even take
24 into account in suggesting that the Tramadol was the
25 cause of this accident, the fact that there were another

Proceedings

6

1  physical condition of the defendant, of Mr. Smith, that
2  could have caused this.  And that particular witness, as
3  well, had given another cause of this accident or the
4  mental lapse that Mr. Smith suffered, that the government
5  spent a considerable amount of time trying to rebut.
6          I think this witness, given the nature of his
7  testimony, the only thing he had to offer was the
8  information that Tramadol could cause somnolence in some
9  people.  The government's other witness was a
10 psychiatrist who offered nothing more than that.  I'm not
11 even sure why he was called.  He was not an expert in
12 toxicology.  He was not an expert in pharmacology and he
13 had little to add to the record in this case.
14         As we know, the Federal National Transportation
15 Safety Commission also was unable to even determine what
16 the cause of this accident was.  That is, when I say the
17 cause of this accident, the cause of the mental lapse
18 that Mr. Smith suffered.
19         I think this absence of proof is a factor, is
20 an important factor to be taken into account in the
21 sentence that can be imposed -- that should be imposed
22 here and what is a reasonable and just sentence under the
23 circumstances
24         It's true, it's possible that a truthful form
25 would have resulted in or may have resulted, I don't know

Proceedings

1 that any evidence has been offered, but that it may have
2 resulted in his not being recertified but that is not a
3 proximate cause of the accident or the mental lapse that
4 led to the accident.
5     MS. COYNE: Your Honor, may I be heard briefly?
6     THE COURT: Yes.
7     MS. COYNE: Obviously the government takes
8 exception to your conclusion that the Tramadol played no
9 role in Smith's lapse, but --
10    THE COURT: No, let me put it this way. I said
11 that you had not established by a preponderance of the
12 evidence that it had.
13    MS. COYNE: I understand.
14    THE COURT: And for the reasons that I gave, I
15 don't credit the witnesses that you called to the extent
16 that they testified that it could. In fact, I don't
17 think they had any basis or offered any basis other than
18 the possibility that this could cause somnolence in a
19 certain number of people who take this drug.
20    MS. COYNE: I understand that and obviously our
21 position is different than your conclusion. However,
22 just maybe to refocus for a second, the defendant here is
23 not being charged or being held responsible for Smith's
24 lapse and the crash of the Staten Island Ferry.
25    THE COURT: I understand that but if he had

8

Proceedings

1  filed a statement that was actually a proximate cause of
2  this --
3           MS. COYNE:  I'm sorry?
4           THE COURT:  If the false statement was actually
5  a proximate cause of this, then it would be another
6  matter.
7           MS. COYNE:  Right.
8           THE COURT:  It's an issue to be taken into
9  account in determining what sentence should be imposed.
10          MS. COYNE:  However, there is evidence that had
11 the Tramadol been disclosed, the Coast Guard would not
12 have renewed --
13          THE COURT:  I said that.
14          MS. COYNE:  -- his license.  But the point is
15 that he took from the Coast Guard its ability to make a
16 fully informed decision about whether to renew this
17 license.
18          THE COURT:  I agree with that.
19          MS. COYNE:  That's his crime, whether or not
20 the ferry crashed.
21          THE COURT:  I agree with that.
22          MS. COYNE:  Thank you.
23          THE COURT:  I agree with that assessment.
24          Do you know what effect this felony conviction
25 is going to have on his ability to practice medicine?

Proceedings

9

1    MS. COYNE:  Your Honor, I don't.  I have been
2 contacted by the New York State Medical Board but I have
3 no idea whether this will be a bar for his future
4 practice of medicine.
5    THE COURT:  Do you?
6    MR. MURPHY:  We have been contacted,
7 your Honor.  I understand that they're holding their
8 investigation in abeyance pending the conclusion of this
9 proceeding.  My experience has been that a felony
10 conviction would result in an investigation and an
11 attempt to deprive him of that license, whether or not
12 the conclusions are that the license will be taken, we
13 don't yet know.
14    We do know that he has an unblemished record.
15 He's never been the subject of a disciplinary proceeding.
16 However, given the nature of this case and its profile, I
17 think there's a substantial likelihood that he loses his
18 license.
19    MS. COYNE:  I can say that when they contacted
20 me, they were particularly interested in the fact that
21 there had been several prior false statements leading up
22 to this one.  So, to the extent Mr. Murphy is reaching
23 that conclusion, I would imagine the prior false
24 statements will support that reasoning.
25    THE COURT:  Prior false statements being

Transcription Plus II            Rosalie Lombardi

Proceedings

10

1  similar?

2              MS. COYNE:  In 1989 and 1985, your Honor.

3              MS. COYNE:  Right.

4              THE COURT:  I agree that the guidelines in this
5  case, the sentencing guidelines in this case, the zero to
6  six months and that in taking into account the guideline
7  range, the Sentencing Commission and Congress took into
8  account the various factors that ought to go into what a
9  fair and reasonable sentence is under the circumstances
10 of this case.  And I agree with the government that the
11 guideline range is the appropriate guideline range in
12 this case.

13             The more difficult question here and the one
14 that I struggled with, is whether to give a custodial
15 sentence or not.  On the one hand, the defendant has led
16 an exemplary life and his criminal false statements in
17 this case represent aberrant behavior on his part.  He
18 served for ten years in the United States military.  He
19 served in Operation Desert Storm and he received, among
20 other things, the Army Service Ribbon, the National
21 Defense Service Ribbon, the Overseas Service Ribbon, the
22 Asian Medal with two bronze stars and the Kuwait
23 Liberation Medal.

24             It also appears more likely that he'll lose his
25 medical license as a result of this felony conviction and

Proceedings
11

1 that the loss would be a severe collateral consequence.
2 And in the interim, a sentence of incarceration will have
3 the effect, very likely, of jeopardizing the jobs of 18
4 employees of his. All of those factors suggest that a
5 sentence of incarceration would be inappropriate.
6       One factor that tilts the other way is the need
7 to deter others from filing statements such as these,
8 even though the motivation might have simply been to help
9 a patient. But I believe that the prosecution of this
10 case, the public entry of the plea of guilty and the
11 likely collateral consequences that the defendant would
12 suffer should provide sufficient deterrence to others.
13       And so, then I am going to place the defendant
14 on probation for one year with a special condition that
15 he serve six months of home confinement, which will allow
16 him to continue his practice until the Board of Regents
17 takes action against him and up to 300 hours of community
18 service as may be directed by the probation and a $5,000
19 fine.
20     MS. COYNE: Thank you, your Honor.
21     MR. MURPHY: Thank you, Judge.
22     THE CLERK: Special assessment, Judge?
23     THE COURT: $100.
24     THE CLERK: Are there any remaining counts?
25     MS. COYNE: There are not.

                                                              12
                        **Proceedings**

1           THE CLERK:  Has the defendant waived his right
2   to appeal the plea agreement?
3           MS. COYNE:  He has.
4           MR. MURPHY:  Yes.
5               (Matter concluded)
6                    -oOo-

Transcription Plus II            Rosalie Lombardi

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **November** , 2005.

Rosalie Lombardi

Rosalie Lombardi
Transcription Plus II